United States District Court
Northern District of California

1
2
3
4                      UNITED STATES DISTRICT COURT

5                    NORTHERN DISTRICT OF CALIFORNIA

6

7    MAYA PITARRO,                          Case No.  19-cv-00849-SK

8              Plaintiff,

9         v.                               **ORDER ON MOTIONS FOR FINAL
                                           APPROVAL OF SETTLEMENT AND
10   DSV AIR & SEA, INC., et al.,          FOR ATTORNEYS FEES AND COSTS
                                           AND INCENTIVE PAYMENT**
11             Defendants.
                                           Regarding Docket Nos. 35, 36
12

13

14        This matter comes before the Court upon consideration of the Plaintiff Maya Pitarro's

15   motions for final approval of the class action settlement and for attorneys' fees and costs and

16   Plaintiff's incentive payment.  Having carefully considered the parties' papers, relevant legal

17   authority, and the record in the case, and having had the benefit of oral argument, the Court hereby

18   GRANTS the motion for final approval and GRANTS IN PART and DENIES IN PART the

19   motion for attorneys' fees and costs and Plaintiff's incentive payment for the reasons set forth

20   below.

21                                    **BACKGROUND**

22        In this wage and hour case, Plaintiff seeks final approval of the settlement amount of

23   $1,100,000.  Of that amount, Plaintiff seeks to award one-third as attorneys' fees in the amount of

24   $366,666.67, $10,173.55 in costs and litigation expenses, $8,000 to the class administrator, $7,500

25   to herself as an incentive payment, and the remainder of $686,083.33 to the class members.  (Dkt.

26   No. 36-1 (Declaration of Elizabeth Kruckenberg), ¶ 12; Dkt. No. 35 (Mot. for Atty Fees and

27   Costs).)  Under this apportionment, each class member will receive between $11.07 and

28   $7,848.78, with the average payment being $2,357.67.  (Dkt. No. 36-1, ¶ 12)

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff submitted interrogatory requests and requests for production of documents and analyzed Defendant's responses.  (Dkt. No. 29-1 (Declaration of Matthew J. Matern), ¶¶ 6-7.)  Plaintiff estimated that, if the class were to prevail on all of their claims, the potential damages for violations regarding meal breaks, rest breaks, and working off-the-clock; interest; and civil and statutory penalties would be over $21 million.  (*Id*., ¶ 11.)  Plaintiff retained an expert statistician who reviewed and analyzed Defendant's time and payroll records and prepared an analysis which was used to create a damages model.  (*Id*., ¶ 8.)  The parties settled after an all-day arms-length mediation held in December 2019.  (*Id*., ¶ 9.)  There were no motions filed in this case other than those related to approval of the class action settlement.

Phoenix Settlement Administrators mailed the Class Notice to all 291 class members, after conducting a National Change of Address search and established a Settlement website.  (Dkt. No. 36-1, ¶¶ 4-6, Ex. A.)  After obtaining current addresses for the seven returned notice packets and remailing them, only one notice packet was undeliverable.  (*Id*., ¶¶ 7-8.)  Phoenix Settlement Administrators did not receive any requests to opt out of or any objections to the settlement.  (*Id*., ¶¶ 9-10.)

**ANALYSIS**

**A.    Approval of the Settlement.**

A court may approve a proposed class action settlement of a certified class only "after a hearing and on finding that it is fair, reasonable, and adequate," and that it meets the requirements for class certification. Fed. R. Civ. P. 23(e)(2).  In reviewing the proposed settlement, a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class.  *See Hanlon v. Chrysler Corp.*, 150 F.3d at 1027.  The *Hanlon* court identified the following factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement.  *Id.* at

2

1026 (citation omitted); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Settlements that occur before formal class certification "require a higher standard of fairness." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In reviewing such settlements, in addition to considering the above factors, a court also must ensure that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).

As the Court found in its order granting preliminary approval and conditional certification of the settlement class herein, the prerequisites of Rule 23 have been satisfied purposes of certification of the Settlement Class. Moreover, the Court finds that the notice to the class was adequate and was reasonably designed to reach all class members. In fact, notice to only one class member was deemed undeliverable. (Dkt. No. 36-1, ¶ 8.)

As the Court previously found in its order granting preliminary approval, the *Hanlon* indicate the settlement here is fair and reasonable and treats class members equitably relative to one another. Additionally, the Settlement Administrator received no objections or opt-outs as of the deadline of October 19, 2020. (Dkt. No. 36-1, ¶¶ 9, 10.) "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (citation omitted); *see also Churchill Vill.*, 361 F.3d at 577 (holding that approval of a settlement that received 45 objections (0.05%) and 500 opt-outs (0.56%) out of 90,000 class members was proper).

After reviewing all of the required factors and considering the evidence, the Court finds the Settlement Agreement is fair, adequate, and reasonable.

**B.    Attorneys' Fees.**

Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." A court has discretion to calculate and award attorneys' fees using either the percentage-of-the-fund method or the lodestar method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) *see also Zucker v. Occidental Petroleum Corp.*, 192

1    F.3d 1323, 1328-29 (9th Cir. 1999) ("[T]he district court must exercise its inherent authority to

2    assure that the amount and mode of payment of attorneys' fees are fair and proper.").  The Ninth

3    Circuit has held that twenty-five percent of the gross settlement is the benchmark for attorneys'

4    fees awarded under the percentage method, but the amount may be adjusted "when special

5    circumstances indicate that the percentage recovery would be either too small or too large in light

6    of the hours devoted to the case or other relevant factors."  *Six (6) Mexican Workers v. Arizona*

7    *Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)

8    In assessing whether the percentage requested is fair and reasonable, courts generally

9    consider "the result achieved, the risk involved in the litigation, the skill required and quality of

10   work by counsel, the contingent nature of the fee, awards made in similar cases, and the lodestar

11   crosscheck." *Nwabueze v. AT & T Inc.*, 2013 WL 6199596, at *10 (N.D. Cal. Nov. 27, 2013); *see*

12   *also In re Quintus Sec. Litig.,* 148 F.Supp.2d 967, 973-74 (N.D. Cal. 2001) (noting that courts

13   consider six factors when determining whether to adjust the benchmark percentage, including "(1)

14   the result obtained for the class; (2) the effort expended by counsel; (3) counsel's experience; (4)

15   counsel's skill; (5) the complexity of the issues; (6) the risks of non-payment assumed by counsel;

16   (7) the reaction of the class; and (8) comparison with counsel's loadstar").

17   The overall result and benefit to the class from the litigation is the most critical factor in

18   granting a fee award. *In re Omnivision Technologies, Inc*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal.

19   2008) (citation omitted); *see also Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983) (noting that the

20   "most critical factor" to the reasonableness of an attorney fee award is "the degree of success

21   obtained").  Here, the Court notes that Plaintiff estimates that the class would be entitled over $21

22   million if they were fully successful.  (Dkt. No. 29-1 (Declaration of Matthew J. Matern), ¶ 11.)

23   Thus, the settlement of $1.1 million would provide class members with less than five percent of

24   what they would receive if they were awarded their full estimated damages and penalties.

25   Additionally, Plaintiff did not negotiate any changes to Defendant's policies or practices.

26   Therefore, although Plaintiff did obtain a financial benefit for class members, the Court finds that

27   the results obtained for the class do not warrant increasing the fee percentage.

28   As noted above, Plaintiff's counsel's effort included propounding and reviewing written

United States District Court
Northern District of California

4

1   discovery and documents, retaining a statistical expert to create a damages model, and

2   participating in mediation.  Plaintiff's counsel did not demonstrate that this case was particularly

3   complicated.  Additionally, the Court notes that the litigation was not protracted and did not

4   involve any motion practice.  However, Plaintiff's counsel did work on a contingency basis and

5   demonstrated that counsel are experienced and skillful.  Moreover, no class members objected,

6   even though the motion for attorneys' fees was filed before the time to object had expired.

7          Finally, the Court examines the lodestar calculations in comparison, to provide "a check on

8   the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050.  "The 'lodestar' is

9   calculated by multiplying the number of hours . . . reasonably expended on the litigation by a

10  reasonable hourly rate." *Morales v. City of San Rafael,* 96 F.3d 359, 363 (9th Cir. 1996).  The

11  reasonableness of the rates is judged in comparison to the prevailing rates in the community for

12  similar work performed by attorneys with similar skills and experience.  *In re Magsafe Apple*

13  *Power Adapter Litig.*, 2015 WL 428105, at *11 (N.D. Cal. Jan. 30, 2015) (quoting *Gonzalez v.*

14  *City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013).  Plaintiff's counsel attests that the firm

15  expended 236.5 hours and multiplies those hours by rates of between $950 and $850 an hour,

16  amounting to $208,170.  (Dkt. No. 35-1, ¶ 25.)  To demonstrate the reasonableness of counsel's

17  rates, counsel cites to cases in which the firm's 2019 fees were approved, ranging from $475 to

18  $915, including in this District.  (Dkt. No. 36-1, ¶ 27.)  The Court notes that, despite the fact that

19  the majority of the work completed in this case occurred in 2019, including the discovery, expert

20  analysis, and mediation, Plaintiff's counsel used the firm's 2020 rates, which appears to be $25

21  more an hour.  (*Id.*)  Additionally, the attorney with the lowest rate on this case was a senior

22  associate with an $850 hourly billing rate, despite the fact that the firm has attorneys who worked

23  on class actions with a 2019 billing rate of $475 and $525.  (*Id.*)  Therefore, the Court finds that

24  Plaintiff's proposed lodestar for comparison is significantly inflated.

25         Having considered the relevant factors, the Court is not persuaded that this case warrants

26  an upward departure from the established benchmark.  Nor does the Court find that a downward

27  departure would be warranted.  Even though twenty-five percent would provide Plaintiff's counsel

28  with a significant amount above its lodestar at a reasonable rate, counsel did work on a

United States District Court
Northern District of California

5

1  contingency basis, obtained a $1.1 million settlement, and no class members objected to counsel

2  receiving an even greater amount.  Accordingly, a benchmark fee award of amounting to twenty-

3  five percent of the settlement fund – $275,000 – is appropriate.

4  **C.    Litigation Costs.**

5      "There is no doubt that an attorney who has created a common fund for the benefit of the

6  class is entitled to reimbursement of reasonable litigation expenses from that fund."  *Ontiveros v.*

7  *Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (quoting *In re Heritage Bond Litig.,* 2005 WL

8  1594403, at *23 (C.D.Cal. June 10, 2005)).  "[C]ourts throughout the Ninth Circuit regularly

9  award litigation costs and expenses – including reasonable travel expenses—in wage-and-hour

10  class actions."  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 265 (N.D. Cal. 2015)

11      The settlement agreement provides that class counsel may obtain up to $13,000 in costs.

12  (Dkt. No. 29-2 (Joint Stip. for Class Action Settlement), ¶ 59.).)  Here, appointed class counsel has

13  submitted a list of costs for filing fees, travel costs, mediation fees, and other litigation related

14  costs, with supporting receipts, amounting to $10,173.55.  (Dkt. Nos. 35-1, ¶ 32, 42-1, 42-2.)  The

15  Court concludes that these are reasonable litigation expenses incurred for the benefit of the class.

16  *See Harris v. Marhoefer,* 24 F.3d 16, 19 (9th Cir. 1994) (noting that a prevailing plaintiff may be

17  entitled to costs including, among other things, "postage, investigator, copying costs, hotel bills,

18  meals," and messenger services).

19  **D.    Administration Costs.**

20      "Courts regularly award administrative costs associated with providing notice to the class."

21  *Bellinghausen*, 306 F.R.D. at 266.  Here, the class administrator, Phoenix Settlement

22  Administrators, was responsible for (i) preparing, printing, translating, and mailing class notice;

23  (ii) responding to inquiries from class members; (iii) calculating the net settlement Amount and

24  the individual settlement payments; (iv) issuing the individual settlement payment checks and

25  distributing them to participating class members; and (v) issuing the Court-approved payments to

26  class counsel and the named Plaintiff, and (vi) issuing the payroll taxes to the appropriate taxing

27  authorities.  (Dkt. No. 36-1, ¶ 2.)  Phoenix Settlement Administrators' costs were $8,000.  (*Id.*, ¶

28  13, Ex. B.)  The Court therefore concludes that Phoenix Settlement Administrators' costs were

United States District Court
Northern District of California

1  reasonably incurred for the benefit of the class and awards the full amount.

2  **E.     Incentive Payment.**

3         "[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs,

4  are eligible for reasonable incentive payments." *Staton v. Boeing Co.,* 327 F.3d 938, 977 (9th Cir.

5  2003); *Rodriguez v. West Pub. Corp.,* 563 F.3d 948, 958-59 (9th Cir. 2009) (district courts may

6  approve incentive awards to named Plaintiffs to compensate them for work done on behalf of the

7  class and in consideration of the risk undertaken in bringing the action).  To determine the

8  appropriateness of incentive awards a district court should use "relevant factors includ[ing] the

9  actions the plaintiff has taken to protect the interests of the class, the degree to which the class has

10  benefitted from those actions . . . the amount of time and effort the plaintiff expended in pursuing

11  the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Staton*, 327 F.3d at 977.  "[I]in

12  this district, a $5,000 incentive award is presumptively reasonable." *In re Linkedin User Privacy*

13  *Litig.*, 309 F.R.D. 573, 592 (N.D. Cal. 2015) (citing *Chao v. Aurora Loan Services, LLC*, 2014

14  WL 4421308, at *4 (N.D. Cal. Sept 5, 2014) (noting that "Plaintiffs' . . . request for a $7,500

15  incentive award for each representative Plaintiff is above the $5,000 figure which this Court has

16  determined is presumptively reasonable").

17         Here, Plaintiff requests an incentive payment in the amount of $7,500.  The Court notes

18  that this amount, while greater than the average award to each class member, is less than the

19  highest class member award of $7,848.78.  Plaintiff describes how she participated in the litigation

20  and the substantial risks she faced by being the named plaintiff.  (Dkt. No. 35-2 (Declaration of

21  Maya Pitarro), ¶¶ 7-8.)  Therefore, the Court finds that Plaintiff's requested award of $7,500 is

22  reasonable.

23                                    **CONCLUSION**

24         For the foregoing reasons, the Court GRANTS Plaintiff's the motion for final approval of

25  the class action settlement and GRANTS IN PART and DENIES IN PART the Plaintiff's motion

26  for attorneys' fees and costs and for Plaintiff's incentive payment.  The Court AWARDS the

27  following fees and costs: $275,000 in attorneys' fees, $10,173.55 in litigation costs; $8,000 to the

28

7

settlement administrator, Phoenix Settlement Administrators, and $7,500 to Plaintiff as class representative.

**IT IS SO ORDERED**.

Dated: January 28, 2021



SALLIE KIM
United States Magistrate Judge